C. P. CRAWFORD, by brief, *contra*.

---

### HOUSER & COMPANY *v.* GURR.

1. Where, before maturity, the merchantable peaches on certain trees are sold at a given price per bushel, the gathering to be done by the purchaser; and where, during the gathering time, the seller consents and agrees with the buyer that all the peaches left on a portion of the trees are not merchantable, and the buyer abstains from gathering them, he cannot be compelled to pay for them, whether they were merchantable or not.

2. If the seller volunteered to gather and deliver some of the peaches, and they were received and paid for by the buyer without objection, this was a ratification of the seller's act. And though these peaches were prematurely and improperly gathered and improperly handled, whereby loss resulted to the buyer, such loss is not the subject of set-off or recoupment in an action brought by the seller against the buyer for the price of other peaches embraced in the same purchase and not paid for, it not appearing that any new fact was discovered after the peaches were received and paid for, or that they were worth less than the contract price.　　　　　　　　　　*Judgment reversed.*

February 15, 1892.

Contracts. Vendor and purchaser. Ratification. Set-off. Recoupment. Before Judge MILLER. Houston superior court. April term, 1891.

Gurr sued Houser & Company on an account for one

v 88-28

hundred and fifty bushels of peaches at seventy-five cents per bushel. The defendants pleaded not indebted; also, recoupment of $150 damages to defendants by the plaintiff's violation of the contract between them. The verdict was in favor of the plaintiff, and to the over-ruling of their motion for a new trial the defendants excepted. Besides the grounds that the verdict was contrary to law and evidence, the motion alleges that the court erred in the following ruling : One of the defendants testified that, under the contract with Gurr, they were to gather the peaches at the orchard; that Gurr, without conferring with them and without their consent, gathered about seventy-five bushels of the best peaches before they were ripe enough to ship, put them in baskets, hauled them several miles to Fort Valley, and delivered them for defendants; that, acting for defendants, witness paid Gurr for them and then shipped them; and that by reason of their being packed (picked ?) too soon and so roughly handled, defendants suffered a loss of $2.00 a bushel on that shipment. Whereupon the court ruled out all evidence as to the amount of loss sustained by defendants by reason of this special shipment, holding that, having received the peaches under the circumstances above detailed, and having paid for them without objection or any stipulation as to possible loss by reason of the shipment, defendants could not set up any claim for damages by reason of such loss.

The motion also complains that "the court erred in permitting the plaintiff to testify, over defendants' objection, as to an offer made by defendants to plaintiff for a certain part of his peach crop prior to the final trade, by which defendants purchased all the marketable peaches of plaintiff's entire crop; plaintiff's evidence on this point being set out in the brief of evidence filed in this case."

The testimony for the plaintiff was, in brief: He made a contract with the defendants before any peaches were ripe, by which they bought all his marketable peaches at seventy-five cents per bushel, they to gather and ship the peaches and to have full control and management of them. They took and shipped the peaches according to contract, except the peaches from a lot of trees called the "stump the world." There were about one hundred of these trees, each having about three bushels of peaches, of which half or more (aggregating about one hundred and fifty or two hundred bushels) were merchantable peaches. When these peaches were ripe, plaintiff sent word to defendants to come and gather them as he would expect pay for them. They gathered and shipped peaches from six hundred other trees, some of which were earlier and some later than the "stump the world"; and it was only as to the last named that he had any complaint. They were a small peach but of fine flavor. There was a large crop of peaches, and a great many were too small to ship on account of the great number on the trees. In negotiating with reference to the trade, defendants offered plaintiff $1.00 per bushel for his Elberta peaches, which he declined; they then offered him seventy-five cents per bushel for merchantable peaches of his whole orchard, to which he agreed.

For the defendants the testimony (besides what has already been stated) was: By the custom of the trade, merchantable shipping peaches meant peaches that in size and quality would do to ship to New York and bring enough to pay freight and something over. All of the peaches coming up to the standard prescribed in the contract were shipped and paid for. The "stump the world" peaches were all too small to come up to the standard, except about thirty or forty bushels, which were shipped and paid for. The most valuable peaches

in the orchard were the Elbertas. The "stump the world" peaches ripened about the time the Elbertas did, or a little before. When the plaintiff sent word to one of the defendants to come out and ship the "stump the world" peaches, this defendant knew them to be too small, but in order to satisfy plaintiff, went out and visited those trees, and after talking with plaintiff awhile, plaintiff agreed that defendants should leave these peaches some of which had been gathered, and go to gathering others a good many of which were ready for market. He agreed that the peaches remaining on the "stump the world" trees should be abandoned as not coming up to the standard. Defendants then gathered the remaining peaches in the orchard of other varieties, shipped and paid for them under their contract. They heard nothing further of any dissatisfaction by plaintiff, until in October he said they had made too much money out of him and must pay him for the "stump" peaches, which they refused to do.

H. A. MATHEWS, for plaintiffs in error.

C. C. DUNCAN, by brief, *contra*.